# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

IN RE                                    )
                                         )        **Case No. 07-01104-TLM**
**MICHAEL URWIN**                        )
                                         )        **Chapter 7**
                          **Debtor.**    )
_____  )

## MEMORANDUM OF DECISION
_____

Before the Court is a "Motion Seeking Contempt Citation for Violation of

the Discharge Injunction,"  Doc. No. 52 ("Motion").  The Motion is filed by

chapter 7 debtor Michael Urwin ("Debtor").  Debtor asks the Court to find

attorney Kristen Thompson and her law firm, Thompson Law Firm, (collectively

"Thompson") in contempt of the Court's order of discharge, Doc. No. 24.[1]  Debtor

requests that a variety of sanctions be imposed against Thompson for her alleged

contempt.  Thompson opposes the Motion.  *See* Doc. No. 57.

Following a December 17 and 18, 2009 evidentiary hearing, the Court took

the matter under advisement.  Upon considering the evidence, written and oral

arguments, and relevant authorities, the Court concludes that Thompson violated

_____

[1]   The Court concludes, below, that there was a violation of the discharge injunction
punishable as a contempt.  Liability of Thompson and her law firm is joint and several, and the
Court's referring to "Thompson" does not signify otherwise.

MEMORANDUM OF DECISION - 1

Debtor's discharge injunction and is in contempt of this Court's order of

discharge. This Memorandum of Decision constitutes the Court's findings of fact

and conclusions of law. Fed. R. Bankr. P. 7052, 9014.

**FACTS**

On December 22, 2005, Gloria Urwin, Debtor's wife, entered into a

retainer and billing agreement with Thompson for the provision of legal services.

*See* Ex. 200. Other than the phrase "Client Signature" appearing below Gloria's

signature, the agreement did not identify the client to be represented by

Thompson. At the hearing, Gloria testified that Thompson was retained to

represent her closely-held business, Gloria Urwin Real Estate, Inc., and Debtor's

closely-held business, Mike Urwin Enterprises, Inc. Thompson testified, however,

that she was retained to represent the Urwins in their individual capacities, as well

as their respective corporations. Additionally, in their answer to Thompson's state

court complaint against them, the Urwins asserted that they hired Thompson not to

represent their businesses but, instead, to represent them as individuals. *See* Ex.

106.[2] Thompson provided legal services to the Urwins between 2005 and early

2008.

Debtor filed a voluntary petition for relief under chapter 7 on July 16, 2007.

---

[2]  As will be discussed further below, the Court need not determine the actual scope of
Thompson's representation in order to decide the matter before it. However, solely for ease of
exposition, the Court will refer generally to Thompson's representation as relating to "the
Urwins."

MEMORANDUM OF DECISION - 2

*See* Doc No. 1.[3]  Gloria did not join in this bankruptcy filing.  Debtor's schedules
and notice of bankruptcy filing did not include Thompson or her law firm as
creditors.  *See* Doc. Nos. 16 and 9, respectively.

The Urwins each testified that they advised Thompson of Debtor's need
and intent to file bankruptcy in personal conversation sometime prior to July 16,
2007, and also advised her of the fact that Debtor had filed in conversations soon
after his July 16, 2007 filing.  Thompson disputes this testimony.

On October 1, 2007, the Urwins met with Thompson at her law office to
discuss pending state court litigation as well as payment of Thompson's legal bills.
At the close of that meeting, Thompson had Debtor and Gloria each sign a retainer
agreement identical to the agreement Gloria signed in December, 2005.  *See* Ex.
200.[4]

On October 24, 2007, the Court entered an order granting Debtor a
discharge under § 727.[5]  Doc. No. 24.  On March 31, 2008, the chapter 7 trustee
filed a "Report of No Distribution" in Debtor's case, Doc. No. 40, indicating that
he had not paid any money to creditors and that the bankruptcy estate had been

---

[3]  The Court takes judicial notice of its files and records.  Fed. R. Evid. 201.

[4]  They were signed by Michael and Gloria personally.  There is no indication that either
signed on behalf of the corporations.  As with the 2005 agreement, no reference is made in the
agreement as to the identity of the client.

[5]  Unless otherwise indicated, all chapter, section and other statutory references are to the
Bankruptcy Code, Title 11 U. S. C. §§ 101-1532.

MEMORANDUM OF DECISION - 3

fully administered.  The Court entered an order approving the trustee's report and closing the bankruptcy estate on December 2, 2008.  Doc. No. 49.

Thompson acknowledges she was made aware of Debtor's bankruptcy in December, 2007, indicating that it was brought to her attention by opposing counsel in the Urwins' state court litigation.  In addition, Thompson admits receipt of a letter on January 10, 2008, advising her of Debtor's bankruptcy, with a copy of Debtor's "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines."  *See* Ex. 203.  Thompson also met with the Urwins and the chapter 7 trustee in January, 2008, to discuss Debtor's bankruptcy.  Thompson ultimately withdrew from her representation of the Urwins near the end of that month.

On January 15, 2009, approximately one year later, Thompson filed a lawsuit against Debtor, Gloria Urwin, Mike Urwin Enterprises, Inc., Mike Urwin Homes, and Gloria Urwin Real Estate, Inc. in state court, Case No. CV-OC-0900929, seeking collection of $71,604.41 in allegedly unpaid legal fees and accrued interest.  *See* Ex. 100.  Appearing without an attorney, the Urwins filed an answer in which they asserted "Bankruptcies" as an affirmative defense.  *See* Ex. 106.[6]  Thompson moved the state court for summary judgment.  *See* Ex. 101. After a June 25, 2009 hearing on Thompson's summary judgment motion, the

---

[6]  Although Gloria alone signed and filed the answer, she included Debtor, Gloria Urwin Real Estate, Inc., and Mike Urwin Enterprises, Inc. as answering parties.  *See* Ex. 106.

MEMORANDUM OF DECISION - 4

state court delayed taking the matter under advisement and granted the parties

additional time to reach a resolution or to submit additional materials concerning

Debtor's bankruptcy.  *See* Ex. 102.

On June 29, 2009, Gloria sent Thompson a letter with copies of Debtor's

notice of bankruptcy filing, his discharge, and a "schedule F" showing Thompson

Law Firm as a listed unsecured creditor.[7]  *See* Exs. 107 and 205.  These documents

were also provided to the state court.  *See* Ex. 102.  On July 7, 2009, Thompson

sent a letter informing the state court that the parties had not settled the matter and

urging the court to enter judgment in her favor despite the Urwins' additional

submissions.  Ex. 104.  Therein she stated: "I have not been provided with any

creditable [*sic*] evidence that proper notification was made or that the debt was, in

fact discharged.  I do not believe the debt was correctly or legally dismissed."  *Id.*

On July 13, 2009, the state court granted Thompson's motion, Exs. 102 and 206,

and entered an "Order and Judgment" against the Urwins and their businesses,

jointly and severally, for $78,288.39, Exs. 105 and 207.

Debtor's position in the instant Motion is that a portion of the debt

Thompson has attempted to collect through her state court action is a pre-

bankruptcy debt that was and is subject to his discharge.  In defense, Thompson

---

[7]  This appears to be a prepared but never-filed amended schedule F.  The schedule F
actually filed by Debtor in this case, Doc. No. 16, does not list Thompson or her law firm as a
creditor, and it was not amended.

MEMORANDUM OF DECISION - 5

contends that Debtor's entire liability for the unpaid fees and costs encompassed by the state court judgment arose postpetition. She also argues that any fees for services rendered and costs incurred *prior* to his July 16, 2007 filing were not actually due until August 10, 2007. She therefore characterizes the same as "postpetition" debts not subject to discharge.

Notwithstanding their respective arguments, the parties provided none of the exhibits to Thompson's complaint specifying the amounts allegedly owed by the Urwins, nor produced any exhibits reflecting the summary judgment submissions to the state court, making it impossible for this Court to determine with precision *which* debts Thompson was attempting to collect.

Though no such exhibits were provided, the testimony of Thompson and Exhibits 106, 110-113, and 200-202 establish the following.

Thompson's billing cycle runs from the 25th day of one month to the 25th of the following month. An itemized invoice is sent to the client sometime between the 25th and the end of the month. Invoices are due in full by the 10th day of the following month. Per the terms of Thompson's retainer agreement, interest accrues at 1.5% per month on all past due balances. *See* Ex. 200.

The parties placed into evidence statements for services Thompson rendered on the Urwins' behalf in June 2007, Ex. 110, July 2007, Ex. 201, August 2007, Ex. 111, September 2007, Ex. 112, and October 2007, Ex. 113. Thompson

MEMORANDUM OF DECISION - 6

handled several matters for the Urwins during this time period. The statements are separated by the matter (file) involved, and each statement itemizes the service performed or cost incurred by date. The statements also include any previous balances that remain unpaid and the accrued interest on those balances.

The July statements indicate that all of the Urwins' legal bills up to June 25, 2007 were paid in full. *See* Ex. 201. They also show that Thompson billed the Urwins $22,964.48 for legal services rendered and costs incurred between June 25 and July 25, 2007. Of this amount, $12,874.99 was for services performed or costs incurred on dates before July 16, 2007. *See id.*[8] These charges came due on August 10.

The August statements reflect that the Urwins made no payments between July 25 and August 25. *See* Ex. 111.

The September statements indicate a total payment of $8,982.94 on September 5, 2007. *See* Ex. 112. These funds were applied to four files – matters #3117-02 ($499.50), #3117-03 ($5,473.13), #3117-05 ($1,459.58), and #3117-06 ($1,550.73). They represented payment in full of the previous balance on each of the files, with the exception of # 3117-06, which remained unpaid to the extent of

---

[8]   This $12,874.99 does not include $943.25 billed for services performed and costs incurred *on* July 16, 2007.

MEMORANDUM OF DECISION - 7

$109.70.[9]

With their answer to Thompson's state court complaint, the Urwins

attached a QuickBooks spreadsheet showing a $10,000.00 payment to Thompson

on September 5, 2007. *See* Ex. 106. A comparison of the payment reflected in the

September statements described above ($8,982.94), and the payment shown in the

Urwins' Quickbooks spreadsheet ($10,000.00) reveals a difference of $1,017.06.

Given the entirety of the testimony and the exhibits, it is reasonable to infer

that this $1,017.06 difference was applied to matter or file #3117-01. The June,

July, and August statements for file # 3117-01 were produced, and the outstanding

balance on that account, which included charges from July and August, was

$1,017.06. *See* Ex. 111.[10] Furthermore, a pattern of applying payments is

evidenced by the statements, *i.e.*, payments received are applied beginning with

the lowest numbered file, until that file account is brought current, and then

applied to the balance outstanding on the next file in numerical order, and so on

until the payment funds are exhausted. This suggests that Thompson would have

---

[9] No evidence was presented as to Thompson's method for applying payments to outstanding charges *within* each file. Applying the generally accepted accounting principle of "first in, first out" (FIFO), the $1,550.73 payment on file #3117-06 is first applied to the unpaid bills from July, and any remaining funds are then applied to unpaid bills incurred in August. The previous balance from July on file #3117-06 was $1,393.43. *See* Exs. 201, 111. Consequently, the $109.70 balance remaining after application of the $1,550.73 represents unpaid bills incurred during the August billing period.

[10] Inexplicably, no September statement for file #3117-01 was introduced.

MEMORANDUM OF DECISION - 8

first applied the September 5 payment to the unpaid balance on file #3117-01.[11]

Applying the Urwins' September 5 payment of $10,000.00 in the manner generally implemented by Thompson, as reflected by the evidence, results in a total of $10,924.38 in unpaid charges for services rendered or costs incurred prior to July 16, 2007.[12]

The Urwins made no additional payments to Thompson after the September 5 payment.

## DISCUSSION AND DISPOSITION

### A.     This litigation concerns Debtor, Michael Urwin, alone

As a preliminary matter, the Court notes again that the sole debtor in this chapter 7 case, Case No. 07-01104-TLM, is Michael Urwin. The Court therefore does not address any issues involving acts or conduct related to Gloria Urwin. Such matters are to be left to the Honorable Jim D. Pappas, the presiding judge in Gloria Urwin's bankruptcy case, Case No. 09-01921-JDP, and its related adversary proceeding, *Thompson Law Firm v. Urwin*, Adv. No. 09-06078-JDP.

---

[11]  Though this appears to be the methodology employed, why Thompson applied the payments in this way is unclear.

[12]  Even if the Court were to deem the $1,017.06 of unaccounted for funds from the September 5 payment to be applied entirely to charges for services performed and costs incurred before July 16, 2007, the result is still $9,985.32 in unpaid bills for services rendered and costs incurred on dates prior to Debtor's July 16, 2007 filing.

MEMORANDUM OF DECISION - 9

### B.    Violation of discharge injunction

#### 1.    Standards

A discharge under the Bankruptcy Code "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [debt discharged under § 727] as a personal liability of the debtor[.]"  § 524(a)(2).  A discharge under § 727 discharges a debtor from all prepetition debts, save those listed in § 523.  *See* § 727(b); *Hessinger & Assocs. v. U.S. Tr. (In re Biggar)*, 110 F.3d 685, 687 (9th Cir. 1997).

Section 524(a) may be enforced through the Court's contempt powers under § 105(a).  *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002).  The party seeking contempt sanctions has the burden of proving, by clear and convincing evidence, that the creditor (1) knew the discharge injunction was applicable and (2) intended the acts that violated the injunction.  *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1007 (9th Cir. 2006) (citing *Bennett*, 298 F.3d at 1069).  "More specifically, a creditor must have actual knowledge of the discharge injunction, but need not have any specific intent to violate the injunction, as simply engaging in a volitional act that does in fact violate the injunction is sufficient to trigger sanctions."  *Perry v. U.S. Bank Nat'l Ass'n (In re Perry)*, 03.2 I.B.C.R. 128, 129-30 (Bankr. D. Idaho 2003) (internal citation omitted); *In re Hawley*, 03.2 I.B.C.R. 108, 111, 2003 WL 21105074, at *5 (Bankr.

D. Idaho 2003); *see also Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191

(9th Cir. 2003) (In the civil contempt context, the focus "is not on the subjective

beliefs or intent of the contemnors in complying with the order, but whether in fact

their conduct complied with the order at issue.") (quoting *Hardy*, 97 F.3d at 1390).

Once the debtor makes an adequate showing as to these two elements, the burden

shifts to the creditor to demonstrate why it was unable to comply with the

discharge injunction.  *Perry*, 03.2 I.B.C.R. at 130 (citing *Bennett*, 298 F.3d at

1069).

### 2.      Thompson's violation of the discharge injunction

Thompson concedes that she knew of Debtor's bankruptcy at the time she

filed the state court lawsuit against the Urwins in January, 2009.  Additionally, the

Court finds that Thompson knew of the discharge injunction at that time.  That

Thompson doubted the authenticity and veracity of certain of the information she

was provided concerning Debtor's bankruptcy and discharge is of no consequence.

Once Thompson knew the discharge injunction existed, she bore the risk of all

intentional acts that violated the injunction, regardless of whether she intended to

violate the injunction.  *See Perry*, 03.2 I.B.C.R. at 129-30; *Hawley*, 03.2 I.B.C.R.

at 111, 2003 WL 21105074, at *5.

Thompson contends, however, that her actions did not violate the

injunction because – in her view – (a) the discharge was invalid as to her, given

MEMORANDUM OF DECISION - 11

Debtor's failure to schedule her claim and provide her timely notice of his

bankruptcy, and (b) all of the unpaid legal fees she sought to recover in her lawsuit

were "postpetition" debts.  In particular, she claims that any fees for services

rendered or costs incurred before July 16, 2007, are nonetheless postpetition debts

because, under her firm's practices and the terms of the retainer agreement, they

did not become due until August 10, 2007.

Neither suggested defense or justification withstands scrutiny.

### a.    Debtor's omission of Thompson as a creditor

Debtor's case is a no asset, no bar date chapter 7 case.  *See* Doc. No. 40.  As

such, dischargeability of a debt is unaffected by whether or not the debt was

scheduled.  *Beezley v. California Land Title Co. (In re Beezley)*, 994 F.2d 1433,

1434 (9th Cir. 1993).  Unless the debt is of a type covered by § 523(a)(3)(B), it has

been discharged under § 727.  *Id.*  If the debt is of a type covered by

§ 523(a)(3)(B), it has not been discharged, and is non-dischargeable.  *Id.*[13]

---

[13]  Section 523(a)(3) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this
title does not discharge an individual debtor from any debt –
. . .
(3) neither listed nor scheduled under section 521(1) of this title, with the
name, if known to the debtor, of the creditor to whom such debt is owed, in time
to permit –
(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of
this subsection, timely filing of a proof of claim, unless such creditor had
notice or actual knowledge of the case in time for such timely filing; or
(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this
(continued...)

MEMORANDUM OF DECISION - 12

Thompson has not alleged, and the evidence does not suggest, that any of the

unpaid fees for Thompson's prepetition legal services qualify as debt covered by

§ 523(a)(3)(B).  Thus, any liability Debtor had to Thompson for unpaid legal fees,

to the extent it arose prepetition, has been discharged, despite Debtor's failure to

list it in his bankruptcy schedules.

### b.    The postpetition debt argument

#### i.    Fees for services rendered and costs incurred before July 16, 2007

Federal law governs the question of when a debt arises under the

Bankruptcy Code.  *Siegel v. Fed. Home Loan Mortgage Corp.*, 143 F.3d 525, 532

(9th Cir. 1998) (citing *California Dep't of Health Servs. v. Jensen (In re Jensen)*,

995 F.2d 925, 930 n.5 (9th Cir. 1993)).  In the Code, "debt" is defined as "liability

on a claim."  § 101(12).  The Code defines "claim" very broadly to mean a "*right*

*to payment, whether or not such right is* reduced to judgment, liquidated,

unliquidated, fixed, contingent, *matured, unmatured*, disputed, undisputed, legal,

equitable, secured, or unsecured[.]"  *See* § 101(5)(A) (emphasis added).  A

"matured claim" is a "right to payment" that is unconditionally due and owing.

*Moffat v. Habberbush (In re Moffat)*, 119 B.R. 201, 205 (9th Cir. BAP 1990)

---

[13] (...continued)
subsection, timely filing of a proof of claim and timely request for a
determination of dischargeability of such debt under one of such
paragraphs, unless such creditor had notice or actual knowledge of the case
in time for such timely filing and request[.]

MEMORANDUM OF DECISION - 13

(quoting BLACK'S LAW DICTIONARY 883 (5th ed. 1979)).  Conversely, an

"unmatured claim" is a "right to payment" that is yet to become due and owing.

*See Cohen v. Lopez (In re Lopez)*, 372 B.R. 40, 48-49 (9th Cir. BAP 2007).

Therefore, Debtor's unpaid legal bills constitute dischargeable pre-bankruptcy

debt to the extent Thompson's "right to payment" arose prior to July 16, 2007,

regardless of the fact that the bills became due and owing on August 10, 2007.

The Ninth Circuit's holding in *Biggar* is instructive.  There, the court

concluded that fees for services rendered before the bankruptcy petition was filed,

even though not due to be paid until after the filing, were nevertheless

dischargeable as prepetition debt.  *Biggar*, 110 F.3d at 688; *see also American

Law Center P.C. v. Stanley (In re Jastrem)*, 253 F.3d 438, 441-442 (9th Cir.

2001).[14]  Similarly, here, a portion of the fees Thompson has attempted to collect

in state court are for services that were rendered and costs that were incurred

prepetition.  Thompson's "right to payment," and consequently her claim, arose

when she rendered the services and incurred the costs.[15]  August 10, 2007, was

---

[14]  *See also* note 18, *infra*.

[15]  Some discussion was had at the hearing concerning the source and nature of Debtor's
personal liability for any of the legal fees incurred pursuant to the December 22, 2005 retainer
agreement signed by Gloria alone.  Indeed, when asked how Debtor could have personal liability
without having signed the retainer agreement, Thompson advanced an alternative basis for
finding personal liability premised on the theory that Debtor's conduct gave rise to an implied
personal guarantee of fees owed by Gloria and/or the corporations.  In any event, for purposes of
this Motion it is sufficient that Thompson has *asserted* that personal liability on the part of Debtor
exists, because a § 727 discharge encompasses even those debts arising from disputed claims.

(continued...)

MEMORANDUM OF DECISION - 14

simply the date Thompson's claim became mature under the terms of the retainer

agreement and her firm policy.  Consequently, at the time of Debtor's filing,

Thompson held an unmatured claim for all services rendered and costs incurred

prior to July 16, 2007.

The unpaid fees for services performed and costs incurred before July 16,

2007 constitute prepetition debt.[16]  Liability for that debt was discharged as to

Debtor.  *See* § 727(b).  Thompson's actions to collect those fees after she became

aware of the discharge injunction in January, 2008, including her instigation and

continuation of the state court lawsuit, were intentional acts that violated the

injunction.  Thompson's misunderstandings regarding the reach of § 101(5)(A) as

to the unmatured claim, the scope of the discharge, or the effect of Debtor not

scheduling her claim, are insufficient defenses to her liability for doing so.

### ii.    Fees for services rendered and costs incurred between July 16, 2007, and October 1, 2007

Debtor's contempt argument, however, does not end with Thompson's

pursuit of the unpaid charges for services rendered prepetition.  At the hearing,

Debtor argued that *any* personal liability he had for unpaid legal fees flowing from

Gloria's December 22, 2005 retainer agreement, or from some other implied

---

[15] (...continued)
*See* § 101(5)(A).  Accordingly, the Court need make no determination concerning the validity of
Thompson's claims that Debtor personally owes these amounts.

[16]  The same totals $10,924.38.  *See* note 12, *supra*, and accompanying discussion.

MEMORANDUM OF DECISION - 15

personal guarantee arising thereafter, was discharged as a prepetition "contingent" debt. Under this theory, Debtor asserts that the discharge bars Thompson's claim against him for unpaid bills for services performed and costs incurred prior to his October 1, 2007 execution of the new retainer agreement, and that her efforts to collect those fees violated the discharge.[17]

Debtor's argument is foreclosed by the Ninth Circuit's decision in *Gordon v. Hines (In re Hines)*, 147 F.3d 1185 (9th Cir. 1998). In *Hines*, the court subscribed to the proposition that a claim for postpetition legal services does not arise until the attorney actually performs those services, even when the attorney was retained prepetition. *Id.* at 1191; *see also Sanchez v. Gordon (In re Sanchez)*, 241 F.3d 1148, 1150 (9th Cir. 2001); *Knutson v. Tredinnick (In re Tredinnick)*, 264 B.R. 573, 576-77 (9th Cir. BAP 2001). After recognizing that the Bankruptcy Code defined "claim" to include a "right to payment" that was "contingent," the court commented:

> But it strikes us that something that constitutes the very essence of the right to payment – such as the performance of services without which the promise to pay fails for a total want of consideration – presents an element of total contingency that is different from the type [of contingency] that is contemplated by [§ 101(5)(A)].

---

[17] The matter before the Court is one of contempt. Part of the debt Thompson sought to collect in state court included fees for services rendered between July 16 and October 1, 2007. Thus, the question here posed by Debtor is properly before the Court, and is not an improper request for an advisory opinion as to the reach of the discharge.

MEMORANDUM OF DECISION - 16

*Hines* 147 F.3d at 1191 n.9.[18]  Under *Hines*, Thompson's right to payment for

legal services performed on or after July 16, 2007 arose postpetition.  Thus, any

debt Debtor owed to Thompson for those services is not subject to Debtor's

discharge, and no action for contempt lies in this regard.

In sum, Debtor's assertions of discharge violations are well taken only as to

the $10,924.38 in unpaid legal fees for services performed and costs incurred

before July 16, 2007.  Debtor has shown that Thompson's actions related to

securing a judgment for these unpaid charges were intentional and violated the

discharge injunction, and that Thompson knew of the Debtor's bankruptcy and of

the discharge injunction.  Thompson's apparent doubts concerning the validity of

the discharge do not excuse her violation.  *See Espinosa v. United Student Aid

Funds, Inc.*, 553 F.3d 1193, 1205 n.7 (9th Cir. 2008) ("A creditor is not free to

violate the discharge injunction because it has doubts as to the validity of the

discharge."), *cert. granted mem.*, 129 S. Ct. 2791 (2009).

## C.    Consequences of violation of the discharge injunction

The Court turns now to the consequences of Thompson's conduct.  Debtor

has requested that the Court impose various sanctions on Thompson for her

---

[18]    Although *Biggar*, *Jastrem*, and *Hines* each involved attorneys attempting to collect
fees for services performed relating to the bankruptcy proceeding, the legal principles from those
cases cited to herein apply equally to attorneys representing debtors in matters outside of
bankruptcy.  *See, e.g.*, *In re Hermosilla*, 375 B.R. 20, 26 (Bankr. D. Mass. 2007); *see also Lubit
v. Chase (In re Chase)*, 372 B.R. 125, 132-33 (Bankr. S.D.N.Y. 2007) (applying *Hines* in holding
that expert witness fees for services performed postpetition pursuant to a prepetition agreement
did not constitute contingent, prepetition claims).

MEMORANDUM OF DECISION - 17

violation of the discharge injunction.

Bankruptcy courts have authority to impose civil contempt sanctions under § 105(a). *In re Brown*, 408 B.R. 509, 525 (Bankr. D. Idaho 2009). While the decision to impose civil contempt sanctions is discretionary, *Hawley*, 03.2 I.B.C.R. at 111, 2003 WL 21105074, at *5 (citing *Dyer*, 322 F.3d at 1192), such sanctions must be either compensatory or designed to coerce compliance, and cannot be punitive in nature, *Dyer*, 322 F.3d at 1192-93. The Court concludes that Debtor's request for contempt sanctions should be granted in part and denied in part.

### 1.      Compensatory sanctions

Debtor seeks compensatory sanctions against Thompson for lost wages, attorney's fees, costs, and emotional distress.

### a.      Lost wages

Debtor testified that he and Gloria met with their attorneys 3-4 times before the contempt hearing, spending 3-4 hours with them at each meeting. From the evidence presented, it is impossible to determine whether the entirety of these meetings was devoted to issues related to this Motion or if some portion was devoted to the litigation in Gloria's case, and if so how much. The Court finds that a total of four hours would be a reasonable amount of time for addressing the discrete issues raised by this Motion. At Debtor's claimed hourly effective wage of $75.00 per hour as a self-employed subcontractor, Debtor lost $300.00 in

MEMORANDUM OF DECISION - 18

potential earnings for which he should be compensated.[19]

### b.    Attorney's fees

Gloria testified that she and Debtor had incurred approximately $2,000.00 in legal fees in attempting to secure relief from Thompson's post-discharge collection efforts, up to filing the instant Motion, and another $3,500.00 after filing the Motion.  Although this testimony was not rebutted, it is unclear whether these fees arose solely from or in connection with efforts related to this Motion or whether some were related to Gloria's ongoing bankruptcy litigation with Thompson.  Considering the evidence as a whole, the Court finds that $2,000.00 is adequate to compensate Debtor for legal expenses he reasonably incurred to enforce his discharge injunction.

### c.    Costs

Debtor requests compensation for the $260.00 fee paid to reopen the bankruptcy case in order to prosecute this Motion.  *See* Doc. No. 53.  However, no fee is due if the reopening of a case is to file an action related to the discharge. *See* Bankruptcy Court Miscellaneous Fee Schedule (28 U.S.C. § 1930) (effective 10/01/2008), at 3, http://www.id.uscourts.gov/docs/bkfees100108.pdf.  The Court will not sanction Thompson to compensate Debtor for a fee he was not required to

---

[19]  Thompson did not present evidence or argument contradicting Debtor's asserted effective hourly wage.

MEMORANDUM OF DECISION - 19

pay.[20]

### d.    Emotional distress

This Court has held that, as a matter of law, a debtor cannot recover damages for emotional distress from a violation of the discharge injunction. *Perry*, 03.2 I.B.C.R. 131-32.  *Perry* noted that "the language of § 105(a) authorizes only those remedies 'necessary' to enforce the bankruptcy code," *id.* at 132 (quoting *Dyer*, 322 F.3d at 1193), and found that "damages for emotional distress, as well as for other intangible kinds of harms, are not 'necessary' to the enforcement of § 524(a)[.]" *Id.* (citing *McBride v. Coleman*, 955 F.2d 571, 577 (8th Cir. 1992)).  The Court further explained that allowing damages for emotional distress would "effectively eviscerate" the Ninth Circuit's holding in *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir. 2002), that no private right of action exists under § 524.  *Id.*

Moreover, even if the Court were to consider damages for emotional distress under a standard similar to the one applied in the automatic stay context, as urged by Debtor, the evidence is insufficient to support such an award.  To receive damages for emotional distress under § 362(k) for a violation of the automatic stay, a debtor must "(1) establish that he suffered significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection

---

[20]   Debtor may file a pleading with the Court requesting a refund of the reopening fee.

MEMORANDUM OF DECISION - 20

between that significant harm and the violation of the automatic stay (as distinct, for instance, from anxiety and pressures inherent in the bankruptcy process)." *In re Gorringe*, 348 B.R. 789, 794 (Bankr. D. Idaho 2006) (quoting *Dawson v. Washington Mutual Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1148 (9th Cir. 2004). Debtor failed to make this showing.

Debtor cannot, and will not, recover damages for emotional distress.

### 2.    Coercive sanctions

Debtor also requests that the Court impose non-compensatory fines for Thomspon's violation of the discharge injunction. The Court finds that sanctions are not required to coerce compliance in this case. Thompson, while aware of Debtor's discharge and intentionally acting to collect prepetition debt, has not shown a cavalier attitude toward the discharge injunction or a propensity to violate it. A portion of the fees Thompson sought to collect in her state court action were postpetition in nature and thus nondischargeable, and it appears that the violative conduct with respect to the prepetition fees flowed from Thompson's erroneous understanding or interpretation of bankruptcy law rather than an intent to flaunt that law. The Court has no reason to believe Thompson will not comply with the discharge injunction as to the prepetition fees from this point forward.[21]

---

[21]  This would include affirmatively taking such steps as necessary to correct the state court order and judgment to eliminate, as a liability of Debtor Michael Urwin, the prepetition amounts as found by this Court.

MEMORANDUM OF DECISION - 21

Therefore, coercive sanctions are deemed unnecessary.

**CONCLUSION**

Upon the foregoing, the Court concludes that the unpaid legal fees for services rendered and costs incurred before July 16, 2007, totaling $10,924.38, constituted an unmatured prepetition debt subject to Debtor's discharge. Thompson's continuing efforts to collect those fees through state court litigation, after she was made aware of the discharge injunction, violated the injunction and placed Thompson in contempt of this Court's Order of Discharge. Sanctions will be imposed against Thompson in the amount of $2,300.00 to compensate Debtor.

Counsel for Debtor may prepare and submit an appropriate form of order.

DATED: January 14, 2010



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 22